FILED
APR 28 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KARI LANSING, ) | |
| ) | |
| Plaintiff, ) | CV 09-3043-AC |
| ) | |
| v. ) | OPINION AND ORDER |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

ACOSTA, Magistrate Judge:

Plaintiff Kari Lansing challenges the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consent to the jurisdiction of the Magistrate Judge to enter a final order and judgment in

1 - OPINION AND ORDER

accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). For the reasons explained below, the Commissioner's decision is affirmed.

## Background

Lansing alleged disability beginning February 28, 2000, due to mental impairments. Admin. R. 107, 116. Lansing's insured status under the Act expired on June 30, 2001. *Id.* at 105, 112. She must establish she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The relevant period for her Title II claim is, therefore, from February 28, 2000, through June 30, 2001.

The relevant period for Lansing's Title XVI claim began on the protective filing date of her applications. 20 C.F.R. §§ 416.203, 416.501; Social Security Ruling ("SSR") 83-20, 1983 WL 31249 at *1. The record reflects a filing date of September 17, 2004, but the ALJ determined a protective filing date of June 22, 2004. Admin. R. 21, 110, 112. The period that pertains to her Title XVI claim runs from June 22, 2004, until the date of the ALJ's decision, October 25, 2007.

The ALJ applied the disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). The ALJ found that during the period pertaining to Lansing's Title II claim, Lansing's ability to work was significantly affected by a learning disorder and substance abuse. *Id.* at 24. The ALJ found Lansing retained the residual functional capacity ("RFC") to engage in work at all exertional levels, but could not perform work involving complex or detailed tasks and needed the opportunity for hands-on learning with limited reading or memorization. *Id.* at 27.

With respect to the period pertaining to her Title XVI claim, the ALJ found Lansing impaired by a learning disorder, depression, post traumatic stress disorder ("PTSD") in partial remission, panic

2 - OPINION AND ORDER

disorder without agoraphobia, personality disorder, and substance abuse. *Id.* at 24. In addition to the limitations indicated above for the Title II period, the ALJ found Lansing's RFC during the Title XVI period further restricted in that she could not do work involving close interaction with the general public or work performed in a setting where brief periods of inattention would be hazardous or impair her ability to perform the job. *Id.* at 27.

Based on the testimony of a vocational expert ("VE"), the ALJ found that Lansing's past work as an employee in a fast food restaurant did not require the ability to perform activities precluded by her RFC during either period under consideration. *Id.* at 42. In the alternative, the ALJ found that Lansing's RFC during the relevant times did not preclude other work existing in the national economy. Accordingly, the ALJ determined that Lansing was not disabled within the meaning of the Social Security Act. *Id.* at 44.

## Standard of Review

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## Claims of Error

Lansing contends the ALJ failed to give sufficient weight to the opinions and conclusions of three physicians. She argues the ALJ failed to consider the combined effects of her impairments in determining that her condition was not equivalent in severity to any of the presumptively disabling conditions identified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). She contends the ALJ improperly failed to infer an onset date of disability in accordance with SSR 83-20,

1983 WL 31249. Lansing contends the ALJ elicited testimony from the VE based on hypothetical assumptions that did not accurately reflect her true functional limitations.

I.  **Medical Source Statements**

Lansing contends the ALJ erroneously discounted the opinions and conclusions of Susan Donnell, Ph.D., Michael Thein, M.D., and Judy Broekel, M.D. She argues this led the ALJ to achieve an RFC assessment that did not accurately reflect her functional limitations.

*A.     Dr. Donnell*

Dr. Donnell did not treat Lansing, but performed a psychological evaluation in May 2004, at the request of a state child welfare agency. That agency had become involved one year earlier, because of reported substance abuse during Lansing's second pregnancy. When Lansing gave birth in September 2003, she tested positive for marijuana and methamphetamine. In January 2004, her children were removed by the agency after a home visit revealed unsanitary conditions in the home with illegal substances and drug paraphernalia accessible to Lansing's children. Admin. R. 172.

Lansing told Dr. Donnell she had struggled in school with learning disabilities in reading, writing, and spelling, and had attended special education classes until dropping out after the 10th grade. She alleged she had suffered verbal, physical, and sexual abuse as a child and adolescent. She reported depression since childhood, manic or hypomanic moods beginning in adolescence, panic attacks since childhood, and anxiety and nightmares about sexual abuse. She also claimed current difficulties maintaining attention, concentration, and organization. *Id.* at 176-77.

In her mental status examination, Dr. Donnell observed Lansing's mood was euthymic with a normal range of variation. She was anxious during the interview but fully oriented, cooperative,

and interactive. During formal testing, Lansing understood and followed directions well. She worked hard and did not give up easily. *Id.* at 178.

Testing indicated Lansing was below average in numerical reasoning, general fund of information, and the ability to learn new visual motor tasks and visual motor spatial organizational skills. She was in the lower part of the average range of intellectual function. Her working memory, a measure of attention and concentration ability, was also in the low average range. Her social understanding, judgment, abstract reasoning, knowledge and usage of language, short term auditory memory, nonverbal reasoning, and planning and sequencing skills were all in the average range. *Id.* at 181-82.

Dr. Donnell opined that Lansing had significant difficulties with mood, anxiety, attention, concentration, relationships, and behavior. She diagnosed bipolar disorder, PTSD in partial remission, probable attention deficit disorder with extremely poor concentration skills, and cannabis abuse. Dr. Donnell did not rule out personality disorder or cognitive disorder. *Id.* at 182-85. She assigned a global assessment of functioning score of 40, indicating major impairment in several areas of function. *Id.* at 185. American Psychiatric Associaition, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV") 30-32.

The ALJ accepted Dr. Donnell's assessment of Lansing's intellectual functioning and learning disorders. Admin. R. 28. The ALJ found these imposed limitations on Lansing's ability to work, but did not preclude work without complex or detailed tasks or more than limited reading and memorization. *Id.* The ALJ did not give significant evidentiary weight to Dr. Donnell's opinion regarding Lansing's psychiatric diagnoses and global functioning. *Id.* at 30.

An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57. Dr. Donnell's opinion was contradicted by the later psychiatric assessment of Patrick Brown, M.D., and the testimony of the medical expert, John Crossen, M.D. Admin. R. 306-10, 397-407. In any event, the ALJ's explanation was adequate under either standard.

The ALJ accepted Dr. Donnell's assessment of Lansing's intellectual function because it was supported by objective testing. The ALJ did not believe Dr. Donnell's assessment of the severity and effects of Lansing's problems with mood instability, anxiety, attention, concentration, personal relationships, and behavior because they were based primarily on Lansing's unverified subjective reports. *Id.* at 30. Dr. Donnell's mental status examination revealed no clinical abnormalities to support her opinion regarding Lansing's mood, anxiety, attention, concentration, or personality difficulties. *Id.* at 29, 178. Nor did the objective testing suggest abnormalities consistent with those parts of Dr. Donnell's opinion. Lansing's test scores were in the average to low average range in most functional areas, and below average only in numerical reasoning, visual learning and organization, and general fund of information. The absence of objective or clinical findings reasonably supports the conclusion that Dr. Donnell premised her opinion on Lansing's subjective allegations of mood disturbances, anxiety, and panic.

The ALJ identified several indications that Lansing's subjective reporting was not reliable. Lansing minimized the extent of her substance abuse to Dr. Donnell. *Id.* at 28. Lansing told Dr. Donnell she used marijuana occasionally, only a couple of times per month during her periods of heaviest use. *Id.* at 176. Unknown to Dr. Donnell, Lansing later admitted she began smoking marijuana at age 17 and used it daily. *Id.* at 28, 319. Lansing told Dr. Donnell she did not use methamphetamine. She claimed she tested positive while giving birth only because she smoked marijuana which had been laced with methamphetamine without her knowledge. *Id.* at 29, 172. She denied ownership of the methamphetamine and drug paraphernalia found in her home by the child welfare agency in January 2004. *Id.* at 172. Unknown to Dr. Donnell, Lansing later admitted she used methamphetamine daily for two years ending in about April 2004 (*id.* at 319), just one month before Dr. Donnell examined her.

Similarly, Lansing told Dr. Donnell she suffered from severe intractable musculoskeletal pain and headaches, but the medical records do not reflect that Lansing complained to medical providers or sought treatment for these alleged conditions. *Id.* at 28. Lansing's failure to seek treatment for these reportedly severe symptoms reasonably casts doubt on the sincerity of her subjective statements to Dr. Donnell. *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995)(ALJ properly discounted subjective claim of disabling back pain where the claimant sought back treatment only twice in several years and did not complain of back pain to medical providers during treatment for other conditions); *Fair v. Bowen,* 885 F.2d 597, 603-04 (9th Cir. 1993)(ALJ properly concluded allegations of disabling pain were not credible where the claimant received only minimal conservative treatment and offered no explanation for failure to seek additional treatment); *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(Discussing proper factors an ALJ may use in

7 - OPINION AND ORDER

determining the credibility of the claimant's allegations, including an "unexplained, or inadequately explained failure to seek treatment").

Lansing does not challenge the ALJ's determination that her subjective allegations lack credibility. Admin. R. 40-42. It is proper for an ALJ to reject a physician's disability opinion that is premised on the claimant's subjective complaints which the ALJ finds unreliable; the physician's opinion is no more credible than the statements upon which it is based. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009).

The ALJ also found it significant that Lansing's mental impairments allegedly began during childhood or adolescence, but she never sought treatment or reported the symptoms to health care providers. This reasonably casts doubt on the intensity, severity, and functional impact of the symptoms Lansing claimed. *Flaten*, 44 F.3d at 1464; *Fair*, 885 F.2d at 603-04; *Bunnell*, 947 F.2d at 346. In addition, Lansing was able to perform her past work as a fast-food crew member without any mental health treatment. Her chronic symptoms, even when untreated, did not preclude those work activities. Lansing denied any history of concentration or attention problems on the job, and indicated she lost her employment because she made a sexual harassment claim. Admin. R. 175. Later Lansing indicated she stopped working because she was not paid enough. *Id.* at 330. An ALJ may reasonably doubt the veracity of allegations of disabling symptoms when the circumstances under which the claimant stopped working were unrelated to her alleged symptoms. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). This provided the ALJ with another basis to doubt the subjective history upon which Dr. Donnell formulated her opinion regarding Lansing's functional limitations.

The ALJ also found Lansing's reported activities inconsistent with the severity of the symptoms she claimed. For example, Lansing claimed she was so mentally impaired that she avoided leaving her home, but engaged in social activities and remained capable of performing the necessary functions of parenthood, including transporting her children to school, shopping, arranging for and following through with medical care, and complying with the social service agency's requirements to regain custody of her children. Admin. R. 29, 32.

The ALJ discounted Dr. Donnell's GAF assessment, because Dr. Donnell did not indicate how much the GAF was diminished by Lansing's substance abuse. It is clear Dr. Donnell considered Lansing's substance abuse significant. She opined that Lansing should not regain custody of her children until Lansing complied with substance abuse treatment and demonstrated sustained remission through random urinalysis testing. *Id.* at 186-87. Presumably, Dr. Donnell's concern would have been even greater had she known the full extent and recency of Lansing's substance abuse. The ALJ reasoned that Dr. Donnell's GAF score reflected functional limitations resulting from Lansing's drug abuse. *Id.* at 30. Accordingly, the ALJ's conclusion that the GAF score did not accurately reflect Lansing's functional abilities is supported by substantial evidence.

B.   *Dr. Thein*

On November 2, 2004, Dr. Thein performed part one of a psychiatric evaluation consisting of an interview, mental status examination, and review of Dr. Donnell's records. *Id.* at 216. He started Lansing on Lamictal to stabilize her reported mood swings and Xanax XR for her reported anxiety and panic attacks. *Id.* at 216-17. Dr. Thein did not see Lansing to complete part two of the evaluation for four months. By that time, the medications had been helpful in increasing Lansing's global functioning, reducing her overall depression, and smoothing the cycling between moods.

9 - OPINION AND ORDER

Lansing's Xanax prescription had completely wiped out her panic attacks, although she continued to report generalized anxiety. *Id.* at 210.

Dr. Thein did not identify any abnormalities in his mental status examination or clinical observations during either part of the evaluation. *Id.* at 212, 217. He diagnosed bipolar disorder, but noted Lansing did not meet the criteria for either full major depressive episodes or mania episodes. *Id.* at 216. Dr. Thein admitted uncertainty regarding the bipolar diagnosis, "because of a lack of time to be able to really find out where she was in the diagnostic spectrum." *Id.* at 210. Dr. Thein also diagnosed PTSD, panic disorder, methamphetamine dependence in full sustained remission, generalized anxiety disorder, and borderline personality disorder. *Id.* at 213. He assigned a GAF score of 52, which is used to indicate moderate symptoms or moderate difficulty in social or occupational functioning. *Id.* DSM-IV 30-32.

On May 9, 2004, without having seen Lansing again, Dr. Thein responded to a request for a mental status report from a state disability determination agency. Admin. R. 227. Dr. Thein indicated he had not known Lansing very long, did not have a detailed history, and had just begun a medication plan. He admitted he did not know about her work history or any mental deterioration in a work setting. With those disclaimers, Dr. Thein opined that Lansing's mental impairments would make a work environment extremely challenging and predicted Lansing would be "fully disabled psychiatrically for at least the next year." *Id.*

The ALJ did not give great weight to Dr. Thein's opinion regarding Lansing's capacity for work. *Id.* at 34-35. The ALJ's reasons for discounting Dr. Donnell's opinion applied equally in evaluating Dr. Thein's opinion. For example, the ALJ found Dr. Thein's opinion unsupported by his own objective findings and clinical observations. Admin. R. 32-33. Dr. Thein consistently

indicated Lansing presented with benign mental status examinations and stable mood. *Id.* at 212, 214, 217, 258. An ALJ may reject a physician's opinion regarding a patient's limitations when the limitations are not supported by the physician's own clinical findings and observations. *Tommasetti v. Astrue*, 533 F.3d 1041, 1044 (9th Cir. 2008). The ALJ reasonably concluded that Dr. Thein's opinion was based primarily on Dr. Donnell's report and Lansing's subjective allegations, which he accepted without corroboration. *Id.* at 32. As noted previously regarding Dr. Donnell's opinion, a physician's opinion is no more credible than the sources upon which it is based. *Tonapetyan*, 242 F.3d at 1149; *Bray*, 554 F.3d at 1228 n.8.

The ALJ reasonably reduced the weight given Dr. Thein's opinion based on Dr. Thein's disclaimers regarding the short duration of his treatment relationship with Lansing, his lack of a detailed psychiatric and medical history, lack of information regarding Lansing's employment history, and uncertainty about how she would respond to the treatment plan she was just beginning. *Id.* at 32, 35, 227. An ALJ need not accept a physician's opinion that is not adequately explained and supported by clinical findings. *Tonapetyan*, 242 F.3d at 1149; *Thomas*, 278 F.3d at 957. Further, after only one month of treatment, Lansing reported that medication had completely wiped out her panic attacks, which had appeared to be her most debilitating impairment. Admin. R. 210. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also pointed out that Dr. Thein accepted and relied on statements from Lansing that were not true. For example, Dr. Thein believed Lansing's claim that she stopped using methamphetamine in 2002, and consistently indicated Lansing's substance abuse was in full sustained remission. Contrary to that diagnostic finding, Lansing tested positive for

11 - OPINION AND ORDER

methamphetamine in September 2003, admitted using heavily into 2004, and tested positive again in January 2006. *Id.* at 172, 256, 317, 319.

The ALJ noted that Dr. Thein did not propose specific functional limitations or identify work-related activities that Lansing could not perform due to her mental impairments. *Id.* at 35. The ALJ reasonably concluded this diminished the evidentiary value of Dr. Thein's opinion regarding Lansing's inability to work. *Id.*

The ALJ's explanation for discounting the weight she gave Dr. Thein's findings and disability opinion is clear and convincing and supported by substantial evidence. *Thomas*, 278 F.3d at 956-57. Lansing urges the court to interpret the record differently in a manner more favorable to her, but the court must defer to the ALJ's findings of fact if they are supported by reasonable inferences drawn from the record, even if evidence exists to support more than one rational interpretation. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

    C.    Dr. Broekel

Lansing established care with Dr. Broekel on March 7, 2006, seeking behavioral health treatment for bipolar disorder and paperwork to support her claim for disability benefits. Dr. Broekel observed no abnormalities except Lansing became tearful when relating her loss of custody of her children. Admin. R. 263. On the day of this initial visit, Dr. Broekel completed a worksheet marking check boxes to indicate that Lansing had a medically verifiable condition that would limit her ability to perform certain tasks and that she was unable to work. *Id.* at 265. Dr. Broekel did not identify Lansing's medical condition, the tasks that would be limited, or the work activities that Lansing would be unable to perform. Lansing saw Dr. Broekel five times through July 2006 for

routine primary care, and Dr. Broekel recorded generally benign clinical observations. *Id.* at 275-79.

Lansing asserts that the ALJ failed to provide an adequate explanation for discrediting Dr. Broekel's disability opinion on the worksheet dated March 7, 2006. The ALJ considered Dr. Broekel's treatment notes. *Id.* at 36-39. She observed that Dr. Broekel completed the worksheet opinion on the day of her first contact with Lansing after finding no clinical abnormalities. Under such circumstances, it was reasonable for the ALJ to conclude that Dr. Broekel's opinion was based primarily on Lansing's subjective reports. The ALJ's reasons for discounting Lansing's credibility were abundant, as discussed previously. In addition, Lansing complained to Dr. Broekel of symptoms she had not mentioned to other providers and solicited a disability opinion on her first contact. Lansing did not disclose her substance abuse history and was not forthcoming in discussing the loss of custody of her children. *Id.* at 36-37. The ALJ properly discounted Dr. Broekel's worksheet disability opinion because it was brief, conclusory, unsupported by any objective findings or clinical observations, contradicted by the findings of Dr. Brown and the testimony of Dr. Crossen, and based primarily on Lansing's subjective statements which the ALJ properly found unreliable. *Id. Batson*, 359 F.3d at 1195.

In summary, the ALJ properly evaluated the medical source statements of Drs. Donnell, Thein, and Broekel, and found they did not support the functional limitations Lansing claims. Even if the factual record could be interpreted in a manner that supports Lansing, the ALJ's findings rationally interpret the record as a whole and cannot be disturbed. *Batson,* 359 F.3d at 1193.

## II. Listing of Impairments

The regulations apply a conclusive presumption that the claimant is disabled if the ALJ determines that the claimant's impairment is equivalent to "one of a number of listed impairments

that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria necessary to establish the presumptively disabling impairments are enumerated in the Listing of Impairments. The claimant has the burden of proving that she meets or equals the criteria for a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); 20 C.F.R. §§ 404.1526, 416.926.

Lansing argues the ALJ did not properly evaluate the combined effect of her multiple impairments in determining that her condition was not equivalent in severity to any of the presumptively disabling conditions in the Listing of Impairments. The ALJ considered all of the evidence Lansing presented with respect to all of her alleged impairments and compared the findings to the severity criteria for Listings 12.02 *Organic Mental Disorders*, 12.04 *Affective Disorders*, 12.06 *Anxiety Related Disorders*, 12.08 *Personality Disorders*, and 12.09 *Substance Addiction Disorders*. Admin. R. 25-26.

In her opening brief, Lansing failed to identify the Listing criteria she believes she meets or the medical evidence upon which she relies. In her reply brief, Lansing offers only the disability opinion of Dr. Donnell to establish that she is psychiatrically disabled due to her combined impairments. This argument fails because Dr. Donnell's opinion was properly discounted by the ALJ and because it does not establish the severity criteria for any of the presumptively disabling conditions in the Listing of Impairments. To establish the severity necessary for the Listings involving mental disorders, a claimant must demonstrate marked impairment in at least two of the four so-called B criteria, *viz.* activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and repeated episodes of decompensation of extended duration.

Listing of Impairments §§ 12.02, 12.04, 12.06, 12.08. Dr. Donnell's opinion, even if it had not been discounted, does not establish marked impairment in two of the required categories of function. Lansing has not proffered a plausible theory as to how her combined impairments meet or equal the criteria for any presumptively disabling impairment. Accordingly, the ALJ's determination that Lansing failed to prove her impairments met or equaled a Listing was not erroneous. *Burch*, 400 F.3d at 683; *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

### III.  Inference of Onset Date

Lansing contends the ALJ failed to comply with SSR 83-20. When the medical evidence is not definite concerning the onset of disability, an ALJ must infer the onset date in accordance with the guidelines in SSR 83-20, 1983 WL 31249. *Delorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). The onset date is "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, *1. Accordingly, SSR 83-20 applies when there is an explicit ALJ finding of disability, or substantial evidence that the claimant became disabled after the date his insured status expired, raising the question whether the disability arose at an earlier time. *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008). Here, because the ALJ determined that Lansing was not disabled, the question whether an earlier onset date must be inferred is not presented. *Id.*

### IV.  Vocational Evidence

Lansing contends the ALJ elicited testimony from the VE based on hypothetical limitations that did not accurately reflect her true functional limitations. She contends the ALJ should have included additional limitations based on the opinions of Dr. Donnell and Dr. Thein. The ALJ discounted those opinions and her decision provided a legally adequate explanation for doing so.

An ALJ is not required to incorporate limitations based on evidence that she properly discounted. *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001).

The ALJ considered all the evidence and elicited testimony from the VE based on limitations supported by the record as a whole. The hypothetical limitations reflected reasonable conclusions that could be drawn from the record. The court must defer to the Commissioner's findings of fact if they are supported by reasonable inferences drawn from substantial evidence in the record, even if evidence exists to support another rational interpretation that is more favorable to the claimant. *Batson,* 359 F.3d at 1193; *Andrews,* 53 F.3d at 1039-40.

## Conclusion

Based on the foregoing, the Commissioner's decision that Lansing did not prove disability and is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 28th day of April, 2010.

_____
JOHN V. ACOSTA
United States Magistrate Judge